IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARY ANN TACKETT | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No.:_____ |
| SANDS CONSTRUCTION, LLC | ) |
| | ) |
|     Serve Registered Agent: | ) |
|     Steven Roy Sands II | ) |
|     25126 Tonganoxie Drive | ) |
|     Leavenworth, KS 66048 | ) |
| | ) |
|     Defendant. | ) |

**COMPLAINT**

Plaintiff Mary Ann Tackett ("Plaintiff"), by and through her attorneys of record, for her Complaint against Defendant Sands Construction, LLC ("Defendant Sands"), states and alleges as follows:

1. Plaintiff Mary Ann Tackett is a citizen and resident of the state of New Mexico.

2. Defendant Sands is a limited liability corporation organized under the laws of the State of Kansas with its principal place of business located at 1284 Eisenhower Rd, Leavenworth, Kansas 66048. The members and/or owners of Defendant Sands are citizens of the State of Kansas.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in this judicial district.

4. Jurisdiction is proper in this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

5. At all relevant times, Defendant Sands owned and operated a general contracting construction company operating in Leavenworth, Kansas.

1

6. Plaintiff Mary Ann Tackett was hired by Defendant Sands in February of 2019 as a "Project Manager" for various projects and construction jobs.

7. As part of her job as Project Manager, Plaintiff's job required that Plaintiff sign documents certifying to the United States government, the State of Kansas and private entities that Defendant Sands was in compliance with all Occupational Safety and Health Administration ("OSHA") and Federal Department of Transportation ("DOT") safety requirements.

8. After her hire as Project Manager, Plaintiff discovered that Defendant Sands was violating numerous OSHA laws and regulations designed to protect the safety and well-being of Defendant Sands' employees and others working on Defendant Sands' job sites.

9. For instance, Sands Construction was hired by the federal government to provide federal work at Fort Leavenworth in Leavenworth, Kansas in May and June of 2019. As part of its contract with the federal government, Defendant Sands was required to attest in writing that all of its employees working on the job had completed their OSHA ten-hour safety training. Without this training, the government would not let Defendant Sands' employees work on the job.

10. As part of the training certification process, Plaintiff discovered that Defendant Sands perpetuated an illegal scheme to falsify OSHA training records for its employees. Instead of putting its construction employees through the required online training as required by OSHA, Defendant Sands, at the direction of owner and president Steve Sands, paid someone else to take the online OSHA certification courses for multiple Defendant Sands employees so Defendant Sands did not have to pay its employees for taking the required classes.

11. Plaintiff learned that Defendant Sands then falsely stated to the Federal Government it was in compliance with the training in order to work on the federal property. These

false statements regarding training violated 18 U.S.C. § 1001, which prohibits making "any materially false, fictitious or fraudulent statements" to the federal government.

12. When Plaintiff demanded that Defendant Sands cease this fraudulent practice, Plaintiff was mocked and reprimanded for costing Defendant Sands money to obtain the proper training for its employees.

13. In June and July of 2019, Plaintiff became aware that many of Defendant Sands' commercial motor vehicles had not been inspected per DOT regulations since 2015. These multiple failures to inspect violated the Federal Motor Carrier Safety Administration ("FMSCA") Section 396.

14. Under FMSCA regulation 49 C.F.R. § 396.3:

Every motor carrier and intermodal equipment provider must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control.

15. Under FMSCA regulation 49 C.F.R. § 396.17:

Every commercial motor vehicle must be inspected as required by this section… For example, for a tractor semitrailer, full trailer combination, the tractor, semitrailer, and the full trailer (including the converter dolly if so equipped) must each be inspected.

16. The purpose of these federal regulations is to ensure the safe operation of commercial motor vehicles and to protect the safety of the public.

17. Upon learning that Defendant Sands was violating this regulation, Plaintiff directed Defendant Sands' employees to obtain safety inspections and bring all Defendant's commercial motor vehicles into DOT compliance for inspection and safety.

18. When Defendant Sands' owner and president Steve Sands learned of the effort and expense related to the DOT safety inspections and compliance, he was furious and upset with

Plaintiff. He told her she should not have "spent all that money" to get the required inspections completed.

19. In addition, Plaintiff learned during the summer of 2019 that Defendant Sands had multiple vehicles in its fleet that required Commercial Drivers' Licenses ("CDLs") in order to be driven. Other than one employee who had a temporary CDL, Defendant Sands had no CDL drivers to operate its fleet of commercial motor vehicles. The lack of CDLs for multiple drivers in Sands' fleet violated K.S.A. § 8-2,132, and 49 C.F.R. § 383.23 which specifically require commercial drivers' licenses for all commercial vehicle operators.

20. In addition, Defendant Sands' knowledge that its employees were operating commercial motor vehicles without CDLs violated 49 C.F.R. § 383.37 and K.S.A. § 8-264 which prohibits Defendant Sands from allowing its employees to operate its commercial motor vehicles without CDLs.

21. When Plaintiff asked the Sands drivers why they were driving commercial motor vehicles without a CDL, they told her that they would be fired by Defendant Sands if they did not violate the law.

22. Again, Plaintiff brought this safety issue to the attention of Defendant Sands' owner and president Steve Sands and was rebuffed, ridiculed and dismissed for raising safety concerns.

23. From the time she began making safety complaints regarding the numerous unlawful violations to Defendant Sands, Plaintiff was ostracized and ridiculed by Steve Sands and co-employees.

24. In August 2019, an employee of Defendant Sands was injured on Defendant Sands' construction site and was forced to miss days of work as a result of his injuries.

25. After the injury occurred, Defendant Sands failed to log the injury as required by 29 C.F.R. § 1904 and sent the employee home without further investigation. 29 C.F.R. § 1904.7(a) states, in pertinent part:

> When an injury or illness involves one or more days away from work, you must record the injury or illness on the OSHA 300 Log with a check mark in the space for cases involving days away and an entry of the number of calendar days away from work in the number of days column. If the employee is out for an extended period of time, you must enter an estimate of the days that the employee will be away, and update the day count when the actual number of days is known.

26. Plaintiff emailed Steve Sands and Defendant Sands' office administrator and notified them that Defendant Sands was once again in violation of OSHA and labor regulations related to workplace injury.

27. In response to this email, Defendant Sands' owner and president Steve Sands called Plaintiff, verbally attacking and threatening her. Among other things, Steve Sands told Plaintiff to stay out of company decisions. Steve Sands also told plaintiff to never email him again discussing safety and that the email greatly angered Steve Sands.

28. After this abusive and threatening phone call, Plaintiff was in tears and fled Defendant Sands' office because she was afraid Steve Sands might show up in person and continue his violent tirade.

29. Plaintiff told Steve Sands via text that evening that she was crushed and hurt that he responded to her aggressively.

30. Plaintiff never told Defendant Sands she was resigning and never submitted a letter of resignation.

31. The next morning, Plaintiff went in early to the office to talk to Steve Sands about the safety issues and actions to be taken to ensure Defendant was in compliance with the safety rules and guidelines.

32. When she arrived, plaintiff found that she was locked out of her computer and email. Defendant Sands told her to clean out her desk and leave the premises immediately.

33. Plaintiff was ultimately terminated by Defendant Sands for continually raising safety complaints and unlawful actions to her employer as set forth above. These violations were violations of the law intended to protect the safety and well-being of Defendant Sands' employees, other construction workers and the public.

34. At the time Plaintiff reported Defendant Sands' wrongdoing, Plaintiff was performing all duties of her job satisfactorily.

35. Plaintiff's complaints to Defendant Sands were the reason that Defendant Sands decided to terminate Plaintiff's employment.

36. As a direct and proximate result of Defendant Sands' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

37. As a direct and proximate result of Defendant Sands' actions and/or omissions, plaintiff was forced to leave her family and grandchildren and find new employment in New Mexico alone. Plaintiff has suffered humiliation, embarrassment, emotional distress and mental anguish, pain and suffering, and related compensatory damages.

38. As shown by the foregoing, Defendant Sands' conduct was willful, wanton and malicious, thus justifying an award of punitive and/or exemplary damages in an amount sufficient to punish Defendant Sands or to deter them and other employers from like conduct in the future.

WHEREFORE, Plaintiff Mary Ann Tackett requests that the Court enter judgment in her favor and against Defendant Sands Construction, LLC for such damages, actual, nominal and punitive, as are fair and reasonable, in excess of Seventy-Five Thousand Dollars ($75,000.00), for

her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to D. Kan. Rule 40.2(a), Plaintiff hereby requests a trial by jury on all matters and allegations of wrongful conduct alleged in this Complaint and further requests that trial be held in Kansas City, Kansas.

Respectfully submitted,

**KETCHMARK & McCREIGHT, P.C.**

By: /s/ Michael S. Ketchmark
Michael S. Ketchmark - #25254
Scott A. McCreight - #14103
Ben H. Fadler - #21943

11161 Overbrook Road, Suite 210
Leawood, KS 66211
Telephone: 913/266-4500
Facsimile: 913/317-5030
Email: mike@ketchmclaw.com
Email: smccreight@ketchmclaw.com
Email: bfadler@ketchmclaw.com

**THE SNYDER LAW FIRM, LLC**

By: /s/ Paul D. Snyder
Paul D. Snyder - #14537

10995 Lowell Ave, Ste 710
Overland Park, KS 66210
Telephone: 913/685-3900
psnyder@snyderlawfirmllc.com

**Attorneys for Plaintiff**