# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARY ANN TACKETT,

    *Plaintiff,*

vs.

Case No. 21-02017-EFM

SANDS CONSTRUCTION, LLC,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Sands Construction, LLC's Motion for Judgment on the Pleadings (Doc. 7). This motion comes in response to Plaintiff Mary Ann Tackett's complaint of retaliatory discharge. For the reasons stated below, this Court grants the motion in part and denies the motion in part.

### I.    Factual and Procedural Background[1]

In February 2019, Plaintiff Mary Ann Tackett was hired as a project manager by Defendant Sands Construction, LLC. Part of her job duties included ensuring and certifying that Sands Construction was in compliance with the Occupational Safety and Health Administration's ("OSHA") and Federal Department of Transportation's ("DOT") safety requirements. After

---

[1] All facts and inferences are taken in the light most favorable to the non-movant, Plaintiff Mary Ann Tackett.

beginning work, Tackett learned that Sands Construction was not complying with all of these requirements.

In order to comply with a government contract, Sands Construction was required to put its employees through a ten-hour OSHA training. At the direction of Steve Sands, Sands Construction paid outside parties to take the OSHA training rather than paying its own employees to take it. The company then reported to the federal government that it was in compliance with the training requirements. Tackett told Sands Construction to stop these practices, but her statements were dismissed.[2]

Later, Tackett learned that Sands Construction had not inspected its commercial vehicles since 2015. She told the employees to get the vehicles inspected, which upset Steve Sands when he learned of it. Tackett next discovered that many of Sands Construction's vehicles required commercial drivers' licenses to be operated legally, but only one employee in the company had the required license. The other employees told Tackett that Sands Construction would fire them if they did not continue operating the vehicles without the licenses. Tackett brought this issue to Steve Sands, who dismissed her.

Finally, a Sands Construction employee was injured on a construction site and had to miss work. Sands Construction did not log or investigate the injury. Tackett emailed Steve Sands and a Sands Construction office administrator to notify them that the company was not complying with OSHA regulations. Steve Sands responded to the email angrily, phoning Tackett and "verbally attacking and threatening her."[3] Steve Sands told Tackett to stay out of company decisions, and

---

[2] Although the complaint indicates that Tackett made reports to Defendant Sands Construction, it does not indicate to whom within the company the reports were made.

[3] Compl., Doc. 1, p. 5.

the next day Tackett was locked out of her computer and email. She was then fired by Sands Construction, which she asserts was in response to her safety complaints.[4]

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial. The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[5] To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[6] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[7] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[8] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[9]

## III. Analysis

"At-will employment is the general rule in Kansas."[10] Without an expressed or implied contract, employment can be terminated at the will of either party.[11] Kansas does, however,

---

[4] The complaint indicates that Tackett was "ultimately terminated," but is not clear on the timing of the termination in relation to the events discussed above.

[5] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[7] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[8] *Id.* (citation omitted).

[9] *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013).

[10] *Flenker v. Willamette Indus., Inc.*, 266 Kan. 198, 967 P.2d 295, 298 (1998).

[11] *Id.*

recognize a few exceptions to that general rule based on public policy considerations.[12] The exception relevant to this case is retaliatory discharge based on whistleblowing.[13] The whistleblower exception protects employees from "reprisals for performing their civil duty of reporting infractions."[14] To establish a retaliatory discharge claim based on whistleblowing, an employee must show that:

> (1) [A] reasonably prudent person would have concluded that the employer or a coworker was engaged in activities that violated rules, regulations, or the law pertaining to public health and safety and the general welfare; (2) the employer had knowledge that the employee reported the violation prior to his or her discharge; and (3) the employee was discharged in retaliation for making the report.[15]

Defendant's Motion for Judgment on the Pleadings does not challenge Tackett's claims of wrongdoing or that Tackett was discharged for reporting misconduct, though it also does not concede these points.[16] It only challenges the complaint's sufficiency in alleging the second element. Courts have interpreted the second element to require an employee to "seek to stop unlawful conduct through the intervention of a higher authority."[17] Thus, the employee must report the illicit activity to "someone higher than the wrongdoer, either inside the company, if available, or outside the company, when internal channels are unavailing."[18] "Simply reporting to

---

[12] *See Campbell v. Husky Hogs, L.L.C.*, 292 Kan. 225, 255 P.3d 1, 4 (2011) (stating that Kansas recognizes four public policy exceptions to at-will employment).

[13] *See Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 689–90 (1988).

[14] *Id.* at 689.

[15] *Lykins v. CertainTeed Corp.*, 555 F. App'x 791, 794 (10th Cir. 2014) (quoting *Shaw v. Sw. Kan. Groundwater Mgmt. Dist. Three*, 42 Kan. App. 2d 994, 219 P.3d 857, 862 (2009)).

[16] In its reply to Tackett's response, Sands Construction states that it takes the Plaintiff's factual allegations as true for the purposes of this motion, although it does not admit to any. Def.'s Reply, Doc. 11, p. 1.

[17] *Lykins*, 555 F. App'x at 794 (quoting *Shaw*, 219 P.3d at 863).

[18] *Id.* (citations omitted).

a higher-level wrongdoer is insufficient," and the report must be made to a "non-complicit higher authority."[19]

Defendant argues that, according to Tackett's complaint, Steve Sands was at least complicit in each of the accused wrongdoings. Sands Construction asserts that by reporting the wrongdoing to Steve Sands, an allegedly complicit party, Tackett has only notified a higher-level wrongdoer and is therefore not entitled to a claim for retaliatory discharge. This Court will consider the company's argument as applied to each alleged wrongdoing in Tackett's complaint.

A.  **Payment to Outside Parties to Complete OSHA Training at the Direction of Steve Sands and Sands Construction's Misrepresentations to the Federal Government**

Tackett's complaint unequivocally states that the company paid for outside parties to take required OSHA training at the direction of owner and president Steve Sands. The complaint also states that Tackett "demanded that Defendant Sands [Construction] cease this fraudulent practice,"[20] but does not specify to whom the demands were made. Because the complaint indicates that Steve Sands is a wrongdoer and also the president and owner of the company, any internal reporting by Tackett could not have been made to a higher authority than the wrongdoer. Therefore, only a report to someone outside of the company could establish the second element of a retaliatory discharge claim for this allegedly wrongful action. Tackett does not assert that she made any reports outside the company, and only mentions demands to "Defendant Sands [Construction]"[21] in her complaint. Without going outside Sands Construction, Tackett's reports for this conduct were not protected by Kansas's whistleblower exception, no matter who she made them to inside the company.

---

[19] *Id.* at 794–95 (citation omitted).

[20] Compl., Doc. 1, p. 3.

[21] *Id.*

In Tackett's response to Defendant's motion, she now argues that the OSHA-related wrongdoing constitutes two separate parts: (1) paying outside parties to take the training, and (2) making false reports to the federal government. Tackett asserts that although Steve Sands directed the payments to outside parties, there are no facts in her complaint indicating that Steve Sands participated in or knew of the false statements to the government. Thus, Tackett argues that because she does not allege that Steve Sands knew of the false statements regarding the OSHA training, her report of the OSHA violations to Steve Sands constitutes a report to a non-complicit higher authority.

The Court concludes that this argument is without merit. It is not plausible that Steve Sands directed the payments to outside parties for taking the training, but was unaware that the false records would be reported to the federal government.[22] Because Tackett's arguments are not plausible on their face, her claim cannot survive dismissal. Therefore, Defendant's Motion for Judgment on the Pleadings is granted as it relates to both the payments to outside parties to take the OSHA training, and the false reporting to the federal government.

**B.     Failure to Inspect Commercial Vehicles**

Tackett also alleges that Sands Construction failed to inspect its commercial vehicles in violation of 49 C.F.R. § 396.3 and § 396.17. Tackett's complaint states that she directed Sands Construction's employees to obtain safety inspections, and that Steve Sands later learned of this and became upset with her. Kansas law does not protect employees before they actually "blow the whistle."[23] There are no facts indicating that Tackett reported the alleged failures to any party,

---

[22] *See Bell Atl. Corp.*, 550 U.S. at 570 (2007) ("Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

[23] *See Fowler v. Criticare Home Health Servs., Inc.*, 27 Kan. App. 2d 869, 10 P.3d 8, 15 (2000) (refusing to recognize a retaliatory discharge claim where an employee "merely threatened to blow the whistle prior to his or her discharge," but never informed his employer that he had actually done so), *aff'd*, 271 Kan. 715, 26 P.2d 69 (2001).

either inside or outside of the company. The complaint states that Steve Sands was upset after he "learned of the effort and expense related to the DOT safety inspections and compliance."[24] The complaint does not indicate that Tackett told Steve Sands that the company was not in compliance, only that she brought Sands Construction into compliance and Steve Sands learned of it later. This is not whistleblowing that is protected by Kansas's retaliatory discharge exception to at-will employment. Because Tackett never actually blew the whistle on Sands Construction's failure to inspect its commercial vehicles, her claim is dismissed where it is based on this wrongdoing.

C. **Operating Commercial Vehicles Without Commercial Drivers' Licenses**

Tackett next asserts that she learned that Sands Construction employees were operating company vehicles without the requisite commercial drivers' licenses. Tackett alleges that employees told her they would be fired by "Defendant Sands [Construction]" if they did not continue to operate the vehicles without the licenses.[25] Tackett also reported the company's alleged operation of commercial vehicles without the requisite licenses to Steve Sands.

In its motion, Sands Construction asserts that Steve Sands is the only one in the company with the power to hire or fire, and that the employees' statements indicate that Steve Sands was at least complicit in the wrongdoing. This would prevent Tackett's reports to Steve Sands from falling under the retaliatory discharge exception as the reports were made to the wrongdoer himself and not to a higher authority. Sands Construction incorrectly conflates Tackett's accusations against Sands Construction and Steve Sands, however. Tackett does not allege that Steve Sands was involved with the commercial drivers' licenses issue. Even if Steve Sands, alone, has the ability to hire and fire, it is certainly plausible that someone else in the company directed the

---

[24] Compl., Doc. 1, p. 3.

[25] *Id.* at p. 4.

employees to allegedly break the law and threaten termination without Steve Sands's knowledge. Therefore, reporting the lack of commercial drivers' licenses to Steve Sands was plausibly to a higher authority than the wrongdoer, and the Defendant's motion is denied as it relates to reports of this conduct.

**D.      Failing to Report and Investigate a Workplace Injury**

Tackett also reported to Steve Sands and an office administrator that Sands Construction failed to log or investigate an injury to one of its workers. Sands Construction claims that Steve Sands, as owner and president of the company, was aware of the injury and the company's obligation to log the injury. Therefore, Sands Construction claims Tackett has alleged facts that Steve Sands was complicit in the wrongdoing and a report to him would not support a retaliatory discharge claim. Sands Construction is inferring far too much from the complaint. The only allegations in the complaint are that an employee was injured, the injury was not recorded, and Tackett reported this to Steve Sands. None of this implies that Steve Sands was a wrongdoer, or that he was complicit in the wrongdoing.

In fact, the complaint states that Tackett emailed Steve Sands to "notify" him that the company was not in compliance, implying that he did not know beforehand.[26] Sands Construction asserts that Steve Sands was aware of the injury, but only defends this assertion by stating that Steve Sands would surely know of an employee injury as the president and owner of the company. This is hardly evidence that Steve Sands was complicit in any wrongdoing and, further, the assertions were also not present in Tackett's complaint—the document now before this Court.

There are no facts that allege Steve Sands to be a wrongdoer or complicit in any wrongdoing relating to the workplace injury. Therefore, a report to Steve Sands, the highest

---

[26] *Id.* at p. 5.

authority in Sands Construction, is enough to plausibly support the second element of Tackett's retaliatory discharge claim. Defendant's Motion for Judgment on the Pleadings is denied as it relates to the company's failure to report and investigate a workplace injury.

## IV. Conclusion

Tackett's claim for retaliatory discharge survives dismissal to the extent it is based on her reports of improper operation of commercial vehicles without the requisite license and the company's failure to investigate and report a workplace injury. The Defendant's Motion for Judgment on the Pleadings is granted to the extent it is based on Tackett's whistleblowing of payments to outside parties to take the OSHA training, false reports to the federal government based on that training, and Sands Construction's failure to inspect its commercial vehicles.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 7) is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Dated this 8th day of July, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE